IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**THE H.D.D. COMPANY, INC., A CORPORATION OF OREGON,**

        Plaintiff,

v.

**NAVIGATORS SPECIALTY INSURANCE COMPANY,**

        Defendant.

3:19-cv-00115-BR

**OPINION AND ORDER**

**CHRISTOPHER T. CARSON**
Kilmer, Voorhhees & Laurick, P.C.
732 N.W. 19th Ave.
Portland, OR 97209
(503) 224-0055

        Attorneys for Plaintiff

**THOMAS LETHER**
**ERIC J. NEAL**
Lether & Associates, PLLC
1848 Westlake Ave. N., Suite 100
Seattle, WA 98109
(206) 467-5444

        Attorneys for Defendant


**BROWN, Senior Judge.**

    This matter comes before the Court on the Motion (#9) for

Summary Judgment filed by Plaintiff The H.D.D. Company, Inc., A Corporation of Oregon, and the Cross-Motion (#14) for Summary Judgment filed by Defendant Navigators Specialty Insurance Company, both seeking a declaratory judgment regarding Defendant's duty to defend. The Court concludes the record is sufficiently developed, and, therefore, oral argument is not required to resolve this matter.

For the reasons that follow, the Court **DENIES** Plaintiff's Motion (#9) for Summary Judgment and **GRANTS** Defendant's Cross-Motion (#14) for Summary Judgment.

## BACKGROUND

The following facts are taken from the pleadings filed by the parties and are undisputed unless otherwise indicated.

### I. The Underlying Dispute

In 2016 SNC-Lavalin Constructors, Inc. (SNC) was awarded a contract from Northwest Natural Gas Company for the expansion of an underground natural-gas reservoir near Mist, Oregon. As the general contractor, SNC hired Plaintiff to construct a portion of the natural-gas transmission pipeline for the project.

The original contract value for Plaintiff's work was $4,806,257.00. SNC later issued a work change order that increased the contract value for Plaintiff's work to

$5,049,949.33. At some point SNC paid Plaintiff $913,188.83 for work completed pursuant to the contract. SNC, however, refused to pay the full contract price demanded by Plaintiff. SNC contends the remaining balance owed to Plaintiff pursuant to the contract is $226,309.78.

This dispute regarding payment between SNC and Plaintiff is subject to arbitration pursuant to the terms of their contract.

On April 3, 2017, SNC served Plaintiff with a Demand for Arbitration (Demand) in order to resolve the payment dispute. A copy of the Demand is attached as Exhibit 1 to the Declaration (#10) of Christopher T. Carson in Support of Plaintiff's Motion for Summary Judgment and as Exhibit 1 to the Declaration (#15) of Merrill Tyler in Support of Navigator's [Cross-]Motion for Summary Judgment.

Plaintiff tendered the defense of SNC's Demand to Defendant pursuant to the Contractor Controlled Insurance Program Policy (Policy) issued by Defendant for the project. A copy of the Policy is attached as Exhibit 2 to the Declaration (#10) of Christopher T. Carson in Support of Plaintiff's Motion for Summary Judgment and as Exhibit 2 to the Declaration (#15) of Merrill Tyler in Support of Navigator's [Cross-]Motion for Summary Judgment.

Defendant rejected Plaintiff's tender of defense on the

ground that there was not any coverage under the Policy for the claim asserted by SNC.

## II. Procedural Background

On December 21, 2018, Plaintiff filed a complaint in Oregon state court against Defendant for declaratory judgment and requested damages for Defendant's alleged breach of contract based on Defendant's refusal to defend Plaintiff in the arbitration pursuant to the terms of the Policy.

On January 24, 2019, Defendant filed a Notice of Removal (#1) of the state-court case to this Court.

On April 26, 2019, Plaintiff filed a Motion (#9) for Summary Judgment.

On May 17, 2019, Defendant filed a Cross-Motion (#14) for Summary Judgment.

On June 20, 2019, the Court took the Motions under advisement.

## STANDARDS

### I. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R.

Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id*.  "This burden is not a light one. . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)(citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment."  *Deering v. Lassen Cmty. Coll. Dist.*,

No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## II. Insurance Policy Construction[1]

Generally "[t]he interpretation of an insurance policy is a question of law." *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 24 (2001)(citing *Hoffman Const. Co. v. Fred S. James & Co* ., 313 Or. 464, 469 (1992)). When interpreting an insurance policy, the court must focus on the intent of the parties, which is

---

[1] Defendant raised a choice-of-law issue asserting the law of Texas "may be controlling." Defendant, however, concedes a choice-of-law analysis is unnecessary at this time "because Texas and Oregon laws do not conflict on policy construction and interpretation" as to whether the duty to defend exists. Def.'s Cross-Motion (#14) at 10. Accordingly, the Court's analysis will be based on Oregon law.

6 – OPINION AND ORDER

determined by looking at the terms and conditions of the policy. *Id.* (citations omitted). The policy must be considered as a whole and viewed by its four corners, and all parts and clauses must be construed to determine whether any clause is modified, limited, or controlled by another. *Id*. (internal quotations and citations omitted). See *also Red Lion Hotels, Inc. v. Commonwealth Ins. Co. of Am.*, 17 Or. App. 58, 64 (2001)(Under Oregon law the interpretation of a provision in an insurance policy is a question of law, and the court's task is to interpret the intent of the parties from the terms and conditions of the insurance policy.).

If a term in an insurance policy is ambiguous, the court must construe the term against the drafter of the policy. *Hamilton*, 332 Or. at 25. *See also Red Lion*, 177 Or. App. at 64 (If there is more than one reasonable interpretation, the court analyzes each reasonable interpretation in light of the specific and broad contexts in which the term is used in the policy. If more than one reasonable interpretation remains, the policy is construed against the drafter.).

A term is ambiguous if there are two or more reasonable interpretations when examined in light of the "particular context in which the term is used in the policy and the broader context of the policy as a whole." *Id.* (citing *Hoffman*, 313 Or.

7 - OPINION AND ORDER

at 470). A term in an insurance policy may also be ambiguous if its meaning is not comprehensible for reasons such as indefiniteness, erroneous usage, or form of expression. *Id*.

**III. Determination of Duty to Defend**

An insurer's duty to defend is determined exclusively by reference to the insurance policy and the pleadings in the underlying action. *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 116 (2012). "'An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.'" *Bresee Homes*, 353 Or. at 116 (quoting *Ledford v. Gutoski*, 319 Or. 397, 399-400 (1994)). The duty to defend arises if the "complaint provides *any basis* for which the insurer provides coverage" even if some of the conduct alleged in the pleadings falls outside of the policy's coverage. *Bresee,* 353 Or. at 116 (emphasis in original). "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Bresee,* 353 Or. at 116

**DISCUSSION**

Plaintiff contends SNC's allegations in the Demand sufficiently state claims for property damage covered under the

8 – OPINION AND ORDER

Policy and loss of use, which trigger Defendant's duty to defend pursuant to the terms of the Policy. Plaintiff asserts it need only submit a "plausible construction of the claim" in order for the court to find a duty to defend under the Policy.

Defendant, in turn, contends SNC's Demand only makes a claim for damages arising from breach of contract and delay, neither of which could reasonably be construed as an "occurrence," "property damage," or "loss of use" under the Policy. Defendant also contends multiple exclusions in the Policy operate to bar coverage even if coverage was triggered.

## I.  The Policy

The Insuring Agreement of the Policy between Plaintiff and Defendant provides:

> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit' seeking damages for "bodily injury" or "property damage "to which this insurance does not apply.
>
> * * *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

>           (2) The "bodily injury" or "property damage"
>           occurs during the policy period; . . ..

The Policy also contains the following definitions:

>      13. "Occurrence" means an accident, including
>      continuous or repeated exposure to substantially the
>      same general harmful conditions.
>
>                          * * *
>
>      17. "Property damage" means:
>           a. Physical injury to tangible property,
>           including all resulting loss of use of that
>           property.  All such loss shall be deemed to occur
>           at the time of the physical injury that caused
>           it; or
>           b. Loss of use of tangible property that is not
>           physically injured.  All such loss of use shall
>           be deemed to occur at the time of the
>           "occurrence" that caused it; or
>
>           b. Loss of use of tangible property that is not
>           physically injured.  All such loss of use shall
>           be deemed to occur at the time of the
>           "occurrence" that caused it.
>
>                          * * *
>
>      18. "Suit" means a civil proceeding in which damages
>      because of "bodily injury", "property damage" or
>      "personal and advertising injury" to which this
>      insurance applies are alleged.  "Suit" includes:
>           a. An arbitration proceeding in which such
>           damages are claims and to which the insured must
>           submit or does submit with our consent; or
>           b. Any other alternative dispute resolution
>           proceeding in which such damages are claimed and
>           to which the insured submits with our consent.

The Policy also includes the following endorsement:

>      A. As respects COVERAGE A BODILY INJURY AND PROPERTY
>      DAMAGE LIABILITY, the Named Insured section of the

> Declarations is amended to include all "enrolled contractors."
>
> B. SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, paragraph b. (1) is deleted and replaced by the following: (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project;"
>
> * * *
>
> I. The following is added to SECTION V - DEFINITIONS:
>
>> "Covered Project" means the project described in the Schedule of this endorsement.
>>
>> "Enrolled Contractors" mean those licensed contractors who, prior to the commencement of their work on the "covered project," have completed the Enrollment Document for the "covered project." However, "enrolled contractors" do not include any manufacturers or suppliers of materials or contractors or subcontractors engaged in environmental work or any professionals, including but not limited to, architects, engineers, geologists or soil professionals, or surveyors unless shown in the Schedule of this endorsement.

**II.  SNC's Demand for Arbitration**

In the Demand for Arbitration SNC asserted: (1) Plaintiff failed to perform work valued at $212,008.72 under the change order; (2) Plaintiff's delay in completing its work resulted in a delay claim for $2,635,200 by another contractor (Snelson) whose work was to be performed after completion of Plaintiff's work; (3) Plaintiff missed its Guaranteed Mechanical Completion date, and, therefore, SNC is entitled to liquidated damages of

$250,000; (4) Plaintiff's use of a polyethylene conduit was inadequate, the conduit broke, the conduit was changed to steel, and the change resulted in additional costs of $507,236; (5) the cost of reworking and disposing of the broken conduit was $257,605; and (6) Plaintiff's delay in completing its work caused SNC to incur expenses of $48,401 for railroad flaggers.

In the Demand SNC also asserted the following:

> As a result of [Plaintiff's] delays, defective work and erroneous material selection, [Plaintiff] failed to complete the work on time and as promised. Such failures are a breach of the parties' Agreement.
>
> * * *
>
> SNC seeks a declaration as to the parties' respective liabilities under the Agreement.

### III. Analysis

Plaintiff contends "[d]elays to the project can reasonably be interpreted as caused by property damage and attendant loss of use of the damaged property (*e.g.*, the conduit)." Pl.'s Mot. (#9) at 8.

A commercial general liability policy is not a warranty or performance bond for a contractor's workmanship. *Naumes, Inc. v. Chubb Custom Ins. Co.*, No. 05-1327, 2007 WL 54782, at *4 (D. Or. Jan. 5, 2007)(citing *Timberline Equip. v. St. Paul Fire & Marine*, 281 Or. 639, 643-44 (1978)). "Liability policies insure against injury to persons and damage to other property caused by

inferior workmanship or products.  The risk being insured by
such policies is the risk of tort liability for physical damages
to others, and not contractual liability because the insured's
product is not of the quality for which the damaged person
bargained."  *Naumes*, 2007 WL 54782, at *4.  *See also Oak Crest
Const. Co. v. Austin Mut. Ins. Co.*, 329 Or. 620, 628 (2000)(When
a plaintiff alleges only breach of contract, there is not an
"accident" within the meaning of the liability policy, and,
therefore, there is not coverage under that policy.).

**A.   "Occurrence" under the Policy**

The Policy defines "occurrence" as "an accident,
including continuous or repeated exposure to substantially the
same general harmful conditions."  Although the Policy does not
define "accident," Oregon courts have held an "accident" has a
tortious connotation and "damage resulting from a breach of
contract is not an accident within the meaning of a commercial
general liability policy."  *Ohio Cas. Ins. Co. v. Ferrell Dev.,
LLC*, 3:10-cv-162, 2011 WL 5358620, at *8 (D. Or. July 27,
2011)(citing *Kisle Fire v. St. Paul & Marine Ins.*, 262 Or. 1, 6-
7 (1972).

In *Oak Crest Construction Company* the Oregon court
held the costs incurred by a general contractor to remove and to
replace the subcontractor's painting work on cabinets and

13 - OPINION AND ORDER

woodwork was not covered under a commercial general liability policy because the damages did not arise from an "accident." 329 Or. at 626-27.

Here Plaintiff contracted to complete its work on a specified schedule. SNC's claim for damages is premised on Plaintiff's breach of that contractual agreement rather than an "accident."

Accordingly, the Court concludes on this record that Plaintiff's breach of its contractual obligation is not an "occurrence" within the meaning of the Policy.

### B. "Property Damage" under the Policy

Plaintiff contends the broken conduit constitutes property damage within the meaning of the Policy. Plaintiff also contends the broken conduit resulted in having to "rework" the project to address the property damage and resulted in loss of use for purposes of coverage under the Policy. Plaintiff asserts the "defective workmanship" of the conduit is evidence of negligence and resulted in damages sufficient to trigger the duty to defend.

In *Ohio Casualty* this Court recognized the difference between delay and property damage. In that case the plaintiff insurance company asserted the defendant's claim for damages for remediation costs to retrofit a transportation system as to a

14 - OPINION AND ORDER

defective, prefabricated bridge and the resulting increased costs of bond and permits did not constitute "property damage" within the meaning of the policy. The policy definition of "property damage" required physical injury to tangible property or loss of use of tangible property. The Court held the delay and increased construction costs were the result of a defective component of the transportation system rather than the result of physical injury to or loss of use of tangible property. 2011 WL 5358620, at *6-*8.

Here Plaintiff's characterization of the broken conduit as "property damage" is insufficient. The conduit was a defective component of the project, but it did not result in any "physical injury." SNC does not assert claims for any "property damage" in the form of physical injury to tangible property nor a loss of use of any property. SNC states it incurred "costs as a result of [Plaintiff's] defective workmanship and selection of improper materials," and, therefore, SNC's stated claim for "breach of contract" does not constitute "property damage" under the Policy.

On this record the Court concludes there is not a genuine dispute as to any material fact, and, as a matter of law, therefore, Plaintiff has failed to state a plausible claim that is covered under the Policy issued by Defendant. Accordingly,

15 - OPINION AND ORDER

the Court concludes Defendant does not have a duty to defend Plaintiff against the claim asserted by SNC in its Demand for Arbitration.

Inasmuch as the Court finds there is not any duty to defend, the Court is not required to determine the applicability of any exclusion stated in the Policy.

## **CONCLUSION**

For these reasons, the Court **DENIES** Plaintiff's Motion (#9) for Summary Judgment, **GRANTS** Defendant's Cross-Motion (#14) for Summary Judgment, and enters Judgment in favor of Defendant.

IT IS SO ORDERED.

DATED this 9th day of July, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge